UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| WESTWOOD ONE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:21-CV-88-HAB |
| | ) | |
| LOCAL RADIO NETWORKS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff sued Defendant for allegedly violating two patents issued by the United States Patent and Trademark Office ("USPTO"). After answering the complaint, Defendant moved for judgment on the pleadings. (ECF No. 35). Defendant asserts that the subjects of the patents are not patent-eligible under 35 U.S.C. § 101. The motion has been fully briefed (ECF Nos. 36, 39, 40). The parties also presented oral argument. (ECF No. 44). Defendant's motion is now ripe for a ruling.

**I.  The Patents**

Plaintiff describes itself as "the nation's leading audio network, delivering content to over 250 million monthly listeners across an audio network of 7,300 affiliated broadcast radio stations and media partners." (ECF No. 39 at 6). In the mid-aughts, Plaintiff applied for, and received, the two patents at issue: U.S. Patent Nos. 7,860,448 ("448 Patent") and 7,412,203 ("203 Patent").

**A.  *The 448 Patent***

The abstract for the 448 Patent describes it as follows:

> In one embodiment, a computer-implemented method [that] 1) prompts a user for a description of localized broadcast content that is to be broadcast by a particular broadcast affiliate, and 2) transmits the description of the localized broadcast content to a broadcast content provider. In another embodiment, a computer-

> implemented method [that] 1) receives a request for localized broadcast content specifying a particular broadcast affiliate; 2) retrieves a description of the localized broadcast content associated with the particular broadcast affiliate; and 3) displays the description of the localized broadcast content to a recording artist.

(ECF No. 29-1 at 2). The invention is visually depicted as:



(*Id*. at 4).

Before the invention, local radio stations would fax or email requests for "localized content," i.e., advertisements, station identifications, and weather forecasts, to recording artists. The artists would then record the content and send it back to the radio stations. According to the patent, this process was problematic for many reasons. Faxes could get misplaced if an artist was

2

recording localized content for more than one radio station. Email fixed the problem of misplacing a sheet of paper, but it could "be difficult for a recording artist to easily locate and open the right email when it is time to record localized content." (*Id*. at 17). What to do?

Into the void steps what the Court can best describe as a fillable web form. On the radio station's end, a user is presented with a form that would allow them to input the localized content, give it a "user-friendly name," assign a "kill date" (the date after which the content should no longer be broadcast), and specify other information. The form would look like this:



(*id*. at 6). There is a form for weather:



(*id*. at 9), and another to assist the artist with pronunciations:



(*id*. at 12). The radio station can also assign specific broadcast times for each piece of localized content to provide "context" to the artist. (*Id*. at 19).

Once the radio station inputted the requested information, a "computer program" uses "code" to display the requested content to a recording artist. The computer program takes the information from the forms and puts it into something that looks an awful lot like an email, and places it in a queue that looks an awful lot like an email inbox. (*See id*. at 13–15). Having accessed the requested content through the computer program, the artist can make the requested recording. Afterward, the artist sends the localized content back to the radio stations "via the satellite delivery system" (which the Court assumes is the fanciest description of email) in individual content files.

**B.**     ***The 203 Patent***

But what does the radio station do with those content files once they are received? The answer, it appears, is plug them into the invention set forth in the 203 Patent. Using the same visual depiction, the abstract describes the invention as follows:

> In a method for operating a radio station, the radio station periodically receives content files via a satellite data channel. The received content files are stored. At least some of the stored files are then retrieved, played and broadcast in accordance with an electronic schedule. In accordance with another method, a plurality of affiliate radio stations are [sic] provided with content fields via a satellite-based content delivery system. Each of the affiliate radio stations is also provided with an electronic schedule that instructs an automation system of the affiliate radio station to retrieve, play and broadcast ones [sic] of the content files, thereby generating a near real-time radio broadcast. Methods and apparatus for recording said content files for tiers of affiliates, and for recording said content for multiple or singular affiliates, are also disclosed.

(ECF No. 29-2 at 2).

Traditionally, a radio broadcast network would transmit content to its affiliates via a constant "network feed." The feed was the same for every affiliate, so it lacked any localized content. Instead, the feed would have fixed-length network breaks where each affiliate could insert

its own local broadcast. Think the weather, news, and traffic broadcast by a radio station at the top and bottom of every hour.

The problem with this arrangement was the lack of flexibility. If a network break was two minutes long, then the localized content needed to be exactly two minutes long. Anything less and the radio station broadcasted dead air. Anything more and the localized content pre-empted the national feed. This left local radio stations constantly trying to hammer round local pegs into square network holes.

The 203 Patent seeks to fix this problem. Instead of a constant network feed, the 203 Patent has the network sending each affiliate content in discrete computer files. These files are then stored by each affiliate. Using an electronic schedule, the affiliate can then designate when each of the generic network content files are to be played. The affiliate can also select when localized content breaks are to occur and can set the length of those breaks without having to worry about fitting into a pre-determined network break. Instead, when the localized content ends, the affiliate can play another of the generic network files. The electronic schedule can also be automated, with a computer program playing either generic network files or localized content files as pre-selected in the schedule.

## II.     Legal Discussion

### A.     *Rule 12(c) Standard*

Rule 12(c) permits a party to move for judgment after the complaint and answer have been filed by the parties. *See* Fed.R.Civ.P. 12(c). The Court reviews Rule 12(c) motions by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). Thus, the Court must view the facts in the complaint in the light most favorable to the nonmoving party and will

grant the motion "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Northern Indiana Gun and Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (internal quotations omitted). Even so, the Court need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law. *Id*.

**B.    *Alice* and the § 101 Inquiry**

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Because patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The Supreme Court instructs courts to distinguish between claims that claim patent ineligible subject matter and those that "integrate the building blocks into something more." *Id*. "First, we determine whether the claims at issue are directed to" a patent-ineligible concept. *Id*. at 217. If so, "we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 566 U.S. 66, 78–79 (2012)).

**1.    *Application of* Alice *to the 448 Patent***

**a.    The 448 Patent is Directed to a Patent-Ineligible Concept**

The Court begins with *Alice* step one. In doing so, it looks to whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (citations omitted). The Court holds that the 448 Patent is directed to a patent-ineligible subject matter.

Plaintiff succinctly states the competing positions on page 13 of its response. While Defendant describes the 448 Patent as "directed to a mere abstract idea of 'directing a remote voice recording artist to record localized broadcast content for a local affiliate,'" Plaintiff claims that the 448 Patent is directed to "a particular process for coordinating the provision of localized broadcast content using a particular series of prompts and transmissions." (ECF No. 39 at 13). The Court fails to grasp the distinction, much less the difference.

Let's look at the details relied on by Plaintiff in its effort to pass *Alice* step one. Plaintiff writes:

> The specific steps of independent claim 1 of the '448 patent, for example, describe a particular centralization of functions, which is managed through the claimed series of prompts and transmissions. The claims that depend from claim 1 have additional specific requirements that cannot be ignored. Claim 6, for example, addresses the additional element of associating labels with content, resulting in an improved communication network. Claim 7 addresses the additional element of improving the communication network by creating associations between elements of the local content and sponsors and kill dates. Claim 11 addresses the additional element of enabling randomized assignment of elements of the description of localized broadcast content to timeslots. And claim 12 builds upon claim 11 by containing the additional specific requirement that the process enables timeslots to be selectable as subject to, or not subject to, randomization.

(*Id.*). Divorced from patent jargon, nothing in the foregoing paragraph improves the relevant technology.

The Court understands the "prompts" referenced in the 448 Patent to be the fillable web forms. By requesting specific information in the various forms, the affiliates are "prompted" to provide that information to the recording artist. But all the "prompts" are part of the process of requesting localized content. If an affiliate needs a weather forecast, they will provide the recording artist with the relevant weather information with or without a pre-populated form. If they need an

advertisement, they will provide the recording artist with the ad copy. Similarly, if a requested recording contains hard-to-pronounce words, the affiliate is likely to provide phonetic spellings even without a particular form allowing them to do so. The "prompts," then, add simply that which is already being provided.

The same can be said for the rest of the patent claims. "Associating labels with content" is not meaningfully different from placing a subject line on an email requesting localized content. "Creating associations between elements of the local content and sponsors and kill dates" can be done by identifying a kill date on a post-it note, hand-written calendar, Outlook calendar, or any other traditional method of scheduling. "Enabling randomized assignment of elements of the description of localized broadcast content to timeslots" is meaningless word salad. If it means that localized content can be played randomly by the radio station, Plaintiff does not explain what stops a station from doing that now.

The Court finds Plaintiff's authorities to be meaningfully different from the 448 Patent's gussied up internal email system. In *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020), the patents "describe[d] a method in which a digital object—e.g., a document, video, or spreadsheet—is assigned a level of security that corresponds to a certain combination of access controls and encryption. The encrypted object can then be embedded or 'nested' within a 'container object,' which, if itself encrypted and access-controlled, provides a second layer of security." *Id.* at 1282. In layman's terms, the invention allowed different people receiving the same file to view different parts of that file depending on their security level. *Id.* at 1296. The patent provided:

> Using a secure labelling regimen, a network manager or user can be assured that only those messages meant for a certain person, group of persons, and/or location(s) are in fact received, decrypted, and read by the intended receiver. Many people within a company may have the key necessary to read a data file that is encrypted

>and sent to many terminals, but the sender may not want all such people to read the file. By employing a secure labelling technique in addition to encryption, the sender can be assured that people having the correct key to decrypt the message but working at different terminals will not receive or be allowed to access the communication.

*Id*. at 1295–96. The Federal Circuit held that "the claims are directed to improving a basic function of a computer data-distribution network, namely, network security." *Id*. at 1296.

The 448 Patent is not directed to improving a basic function of requesting localized content. It does not make that task faster, more secure, or simpler. If anything, by forcing affiliates to fill out forms and check boxes rather than simply send an email, it adds a level of complexity to the process. Instead, by its terms, it is directed toward making sure recording artists don't lose requests from affiliates. It does this by taking requests out of one email inbox and placing them in a different email inbox incorporated into vaguely described software. This is a result or effect, invoking generic processes and machinery.

The Court agrees with Defendant that the 448 Patent is like the patent in *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363 (Fed. Cir. 2019). There, the patent was for a method and system that took information directly from bedside health monitors in a hospital setting and displayed that information on one screen. The purpose was to replace traditional "pen and paper methodologies" that were time consuming and could lead to transcription errors.

The Federal Circuit found that the patent failed step one of the *Alice* test. "On its face, the '251 patent seeks to automate 'pen and paper methodologies' to conserve human resources and minimize errors. This is a quintessential 'do it on a computer' patent: it acknowledges that data from bedside machines was previously collected, analyzed, manipulated, and displayed manually, and it simply proposes doing so with a computer. We have held such claims are directed to abstract

10

ideas." *Univ. of Fla.*, 916 F.3d at 1367. The court found the result of the patent to be "laudable," but noted that "it does not render it any less abstract." *Id*.

So it is here. The 448 Patent acknowledges that local affiliates already have means for transmitting requests for localized content to recording artists, and simply proposes doing so with a different computer program. If the 448 Patent has organizational benefits, they are no greater than those involved in displaying disparate health data on a single screen. The 448 Patent is directed to a patent-ineligible concept, requiring the Court to go on to step two of the *Alice* analysis.

**b.**     Fact Issues on Step Two Preclude the Entry of Judgment

Turning to step two of *Alice*, the Court must determine whether the 448 Patent represents an inventive concept. The "inventive concept" may arise in one or more of the individual claim limitations or in the ordered combination of the limitations. *Alice*, 573 U.S. at 217. An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself and cannot simply be an instruction to implement or apply the abstract idea on a computer. *Id*. at 222–23. "Some inventions' basic thrust might more easily be understood as directed to an abstract idea, but under step two of the *Alice* analysis, it might become clear that the specific improvements in the recited computer technology go beyond well-understood, routine, conventional activities and render the invention patent-eligible." *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) (citations omitted).

The fundamental dispute between the parties on step two is whether there is an issue of fact requiring discovery or a question of law that the Court can determine. The Court finds the former to be true. As Plaintiff's correctly state, "[w]hether the claim elements or the claimed combination are well-understood, routine, [or] conventional is a question of fact." *Aatrix Software, Inc. v. Green*

*Shades Software, Inc.*, 882 F.3d 1121, 1129 (Fed. Cir. 2018). This strikes the Court as being as clear a statement as the Federal Circuit could make.

Defendant attempts to avoid this conclusion in two ways. First, it argues that the Court should ignore paragraphs 10 through 12 of the First Amended Complaint, calling them "threadbare conclusory assertions." (ECF No. 36 at 22). These paragraphs allege, generally, that the processes described in the 448 Patent were not well known, understood, or conventional. (ECF No. 29 at 3–4).

But even if the Court accepted Defendant's position, judgment on the pleadings would not follow. "[A]bsent a clear statement [that the invention was well-understood, routine, and conventional] in the specification, complaint, or other material properly before the court, when disputed such a determination may not be made on a motion for judgment on the pleadings." *Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338, 1347 (Fed. Cir. 2019). This tracks Seventh Circuit case law on Rule 12 motions that recognizes "[w]hile the Federal Rules of Civil Procedure only require notice pleading, a party can plead itself out of court." *Trevino v. Union Pac. R.R. Co.*, 916 F.2d 1230, 1234 (7th Cir. 1990). Put another way, the issue is not whether Plaintiff has pled that the processes in the 448 Patent were not well-understood, routine, and conventional. Rather, the issue is whether Plaintiff pled they were. Defendant points to no such allegations, and the Court can find none.

Second, at the hearing on its motion, Defendant argued that any claim of an inventive concept was contradicted by the 448 Patent itself. Defendant pointed to the language in the 448 Patent discussing the traditional fax and email method for requesting localized content. (*See* ECF No. 29-1 at 17). Defendant wants this language to do too much. True, the 448 Patent shows that there are alternative, conventional means for reaching the same end. But it does not establish that

one or more of the individual claim limitations or the ordered combination of the limitations is well-understood, routine, or conventional. Indeed, it cannot, since the 448 Patent inserts a level of centralization absent from the fax and email scenarios.

The Court tends to agree with Defendant that the ideas in the 448 Patent are not all that inventive. The processes described in the 448 Patent sound like email dressed in formal attire. Yet on the pleadings and the documents incorporated by reference into the pleadings, the only matters the Court can consider, *United States v. Wood*, 915 F.2d 1580, 1581–82 (7th Cir. 1991), the Court has little more than the competing assertions of the parties. Step two cannot, then, "be answered adversely to the patentee based on the sources properly considered on a motion to dismiss." *Aatrix*, 882 F.3d at 1128.

**2.**     *Application of* Alice *to the 203 Patent*

While the Court may be skeptical of the patentability of the processes in the 448 Patent, it has no such concerns about the 203 Patent. The 203 Patent identifies a technical difficulty part of the broadcast network/affiliate relationship, that being the inflexibility of the real time network stream. It focuses itself on means and methods to solve this problem, that being the use of discrete content files that can be organized as needed. The 203 Patent is not directed simply "to operating a broadcast network," as Defendant alleges. (ECF No. 36 at 23). Instead, it is directed to improving a specific problem in network broadcasting.

It is the focus on a particular problem that separates the 203 Patent from Defendant's authorities. In *In re TLI Comms. LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016), the Federal Circuit observed that "the claims here are not directed to a specific improvement to computer functionality. Rather, they are directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive

solution to any problem presented by combining the two." *Id*. at 612. Similarly, in *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019), that court found that "the specification never suggests that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could. Nor does the specification suggest that the invention involved overcoming some sort of technical difficulty in adding networking capability to the charging stations." *Id*. at 768. The Court understands these authorities to teach that, where the patent is directed to specific technical difficulty or improvement, it is not abstract. *See also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016).

The Court is satisfied, at least on the pleadings, that the 203 Patent is sufficiently concrete to satisfy step one of the *Alice* test. As a result, there is no need to go on to step two. *Id*. at 1339. The Court finds that the claims in the 203 Patent are patent-eligible.

### III. Conclusion

For these reasons, Defendant's motion for judgment on the pleadings (ECF No. 35) is DENIED.

SO ORDERED on January 21, 2022.

        s/ *Holly A. Brady*
        JUDGE HOLLY A. BRADY
        UNITED STATES DISTRICT COURT